**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CURT AND ROSANNE SANTOS,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **NO. 08-4521** |
| | : | |
| **NORFOLK SOUTHERN RAILWAY** | : | |
| **COMPANY,** | : | |
| **Defendant.** | : | |

**ORDER & MEMORANDUM**

**O R D E R**

    **AND NOW**, this 21st day of October, 2008, upon consideration of the Motion of

Plaintiffs to Remand the Above-Captioned Case to the Court of Common Pleas of Philadelphia

County, Pennsylvania (Document No. 10, filed October 2, 2008); Defendant Norfolk Southern

Railway Company's Answer to Plaintiffs' Motion to Remand (Document No. 11, filed October

7, 2008); the Motion of Plaintiffs Curt and Rosanne Santos for Leave to File a Supplemental

Brief in Support of the Motion to Remand (Document No. 12, filed October 14, 2008); and

Defendant Norfolk Southern Railway Company's Answer to Plaintiffs' Motion for Leave to File

a Supplemental Brief in Support of Plaintiffs' Motion to Remand (Document No. 13, filed

October 14, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that

the Motion of Plaintiffs to Remand the Above-Captioned Case to the Court of Common Pleas of

Philadelphia County, Pennsylvania is **GRANTED** and the case is **REMANDED** to the Court of

Common Pleas of Philadelphia County.

    **IT IS FURTHER ORDERED** as follows:

    1.  The Motion of Plaintiffs Curt and Rosanne Santos for Leave to File a Supplemental

Brief in Support of the Motion to Remand is **GRANTED**;

2.  The Preliminary Pretrial Conference scheduled for November 4, 2008, is

**CANCELLED**.


**M E M O R A N D U M**

**I.      INTRODUCTION**

On October 22, 2007, plaintiffs Curt and Rosanne Santos filed a Complaint against

defendants Norfolk Southern Railway Company ("Norfolk Southern") and Consolidated Rail

Corporation ("Conrail") in the Court of Common Pleas of Philadelphia County.  Plaintiffs seek

money damages for personal injuries, emotional distress, and loss of society resulting from Curt

Santos's fall from a railroad bridge owned by defendant Norfolk Southern Railway Company.

Plaintiffs allege that defendants' negligence in, *inter alia*, failing to maintain the bridge and post

appropriate warnings caused the accident.

On September 15, 2008, plaintiffs' counsel agreed to dismiss the claims against Conrail.

The following day, defendant Norfolk Southern filed a Notice of Removal in this Court.

Presently before the Court is the Motion of Plaintiffs to Remand the Above-Captioned

Case to the Court of Common Pleas of Philadelphia County, Pennsylvania ("Motion to

Remand").  Plaintiffs contend that defendant's Notice of Removal was untimely because Norfolk

Southern had knowledge that allowed it to ascertain as of the filing of the Complaint that the

other named defendant, Conrail, a non-diverse party, was not liable to plaintiffs, and that, as a

consequence, Norfolk Southern was required to file a notice of removal based on fraudulent

joinder within thirty days of receiving the Complaint or waive its right to remove.  Defendant

Norfolk Southern counters that the case was not removable based on the face of the Complaint, thus the thirty-day period did not commence until it received plaintiffs' stipulation dismissing Conrail.  For the reasons set forth below, Plaintiffs' Motion to Remand is granted and the case is remanded to the Court of Common Pleas of Philadelphia County.

## II.   BACKGROUND

On July 7, 2007, plaintiff Curt Santos climbed onto a railway bridge spanning the Delaware River between Portland, Pennsylvania and Delaware, New Jersey, intending to jump into the Delaware River.  (Compl. ¶¶ 8, 16.)  Plaintiffs allege that as Curt Santos was climbing to the top of the bridge, a piece of the bridge fell off, causing him to lose his grip on the bridge and fall, striking his head, back, arm, and side against the bridge and the concrete support structure. (Id. ¶¶ 19–20.)  Curt Santos lost consciousness and fell into the Delaware River and was rescued by Rosanne Santos and another individual.  (Id. ¶¶ 21–23.)  Plaintiffs allege that the accident resulted from, *inter alia*, defendants' failure to maintain the bridge properly and post adequate warning signs, despite knowing that people regularly used the bridge for recreational purposes. (Id. ¶¶ 10–14, 28–32).

With respect to damages, plaintiffs allege that Curt Santos suffered serious physical injuries, some of which may be permanent; was forced to undergo surgery and other treatment; and lost earnings and the ability to engage in his usual activities.  (Id. ¶¶ 35–39.)  In addition, plaintiffs allege that Rosanne Santos suffered emotional distress from witnessing the accident and jumping into the river to save her husband from drowning and has been and will be deprived of the society of her spouse.  (Id. ¶¶ 43–46.)  On October 22, 2007, plaintiffs filed a Complaint in the Court of Common Pleas of Philadelphia County seeking in excess of $150,000 in damages.

(Id. ¶¶ 39, 44, 46.)

On November 13, 2007, twenty-one days after the filing of the Complaint, defendants

filed an Answer in which they asserted that defendant "Norfolk Southern is and was the sole

owner and possessor of the bridge and that it was solely responsible for the maintenance, control,

inspection, and repair of the bridge . . . ."  (Answer ¶ 8.)  Defendants "specifically denied that

Conrail owned, possessed, controlled, repaired, maintained, inspected or had any authority over,

in contract or law, the bridge . . . ."  (Id.)  As a result, defendants argued that "Conrail owed

Plaintiff no legal duty under Pennsylvania law."  (Id. ¶ 34.)  In the November 13, 2007 cover

letter sent to plaintiffs accompanying defendants' answer, defendants reiterated that "Conrail did

not and does not own or possess the bridge and it plays absolutely no part in repairing,

maintaining, or inspecting the bridge."  (Pls.' Mot. to Remand, Ex. B.)  Defendants requested

that plaintiffs "sign the enclosed stipulation to dismiss all claims against Conrail . . . ."  (Id.)

Plaintiffs' counsel requested discovery on the question of the ownership of the bridge.

(Pls.' Mot. to Remand ¶ 14.)  This discovery revealed that Conrail had sold its ownership interest

in the bridge to a third party in 1999, who transferred it to Norfolk Southern in 2004.  (Id.)

On May 14, 2008, defense counsel filed a Motion for Summary Judgment seeking

dismissal of the claims against Conrail with prejudice on the grounds that Conrail did not possess

the bridge at the time of the accident and thus was not liable to plaintiffs.  (Id. ¶ 17.)  On August

13, 2008, defense counsel sent a letter to the Honorable William J. Manfredi of the Court of

Common Pleas of Philadelphia County requesting a conference to resolve, *inter alia*, the

question of Conrail's liability to plaintiffs.  (Id. ¶ 16.)  Defense counsel wrote that he had

"communicated to Plaintiffs' counsel *ad nauseum* that Conrail has not owned nor had any

4

contact or dealings with the bridge since Conrail sold such property *in May of 1999 - more than 8 years prior to the accident*." (Pls.' Mot. to Remand, Ex. D, at 2 (emphasis in the original).) Defense counsel contended that "Plaintiffs' counsel has repeatedly refused to voluntarily dismiss Conrail from the case. It has become evident that Plaintiffs' counsel is intent on keeping Conrail in the case solely for the purpose of preventing Norfolk Southern from removing the case on diversity jurisdiction grounds." (Id. at 4.)

On September 15, 2008, the parties stipulated that all claims against Conrail were dismissed. (Pls.' Mot. to Remand ¶ 18.) On September 16, 2008, defendant Norfolk Southern filed a Notice of Removal in this Court on the basis that, after the dismissal of Conrail, complete diversity between the parties existed. (Notice of Removal ¶¶ 5–7 (Doc. No. 1, filed Sept. 16, 2008).)

## III.   LEGAL STANDARD

In a motion to remand, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." Abels v. State Farm Fire & Casualty Co., 770 F.2d 26, 29 (3d Cir. 1985). "The party seeking removal has the burden of showing that federal subject-matter jurisdiction exists, that filing of the notice of removal was timely, and that removal is proper." Mountain Ridge State Bank v. Investor Funding Corp., 763 F. Supp. 1282, 1288 (D.N.J. 1991) (superseded by statute on other grounds)  A case may be remanded to state court on the ground of a defect in the removal procedure. 28 U.S.C. § 1447(c). Failure to file a notice of removal within the thirty-day limitations period of 28 U.S.C. § 1446(b) is cause for remand. Capone v. Harris Corp., 694 F. Supp. 111, 112 (E.D. Pa. 1988); Blow v. Liberty Travel, Inc., 550 F. Supp. 375, 375–76 (E.D. Pa. 1982).

IV.     DISCUSSION

      A.     The Removal Process and Fraudulent Joinder

Under the general federal removal statutes, an action brought in state court may be removed by the defendant to the federal district court encompassing the state court if that federal district court would have had original jurisdiction over the action.  See 28 U.S.C. § 1441(a).  A defendant may seek to remove a case filed in state court if the requirements of federal diversity jurisdiction—complete diversity among the parties and the amount in controversy—are met. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723, at 559 (3d ed. 1998).  Section 1441 imposes an additional requirement:  actions "shall be removable [on the grounds of diversity] only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

Plaintiffs may seek to prevent removal through the joinder of defendants who share plaintiffs' citizenship or who are citizens of the forum state.  See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3641, at 152.  Even if plaintiff has joined such a non-diverse defendant, defendants may seek removal on the ground that the non-diverse defendant was fraudulently joined to defeat diversity.  The removing party "has the burden of showing the district court that the joinder of the diversity destroying party was made without a reasonable basis of establishing any liability against that party and was undertaken solely to defeat the federal court's removal jurisdiction."  Id. at 175.

In the Third Circuit, joinder of a non-diverse defendant is fraudulent when "'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint

judgment.'" <u>Abels v. State Farm Fire & Casualty Co.</u>, 770 F.2d 26, 32 (3d Cir. 1985) (citing

<u>Goldberg v. CPC Int'l</u>, 495 F. Supp. 233, 239 (N.D. Cal. 1980)).

Laying out its approach to the fraudulent joinder inquiry, in <u>In re Briscoe</u>,, 448 F.3d 201,

217 (3d Cir. 2006), the Third Circuit reviewed the "three decisions of this court in which we

have developed our fraudulent joinder jurisprudence: <u>Batoff v. State Farm Insurance Company</u>,

977 F.2d 848 (3d Cir. 1990); <u>Boyer v. Snap-On Tools Corporation</u>, 913 F.2d 108 (3d Cir. 1990);

and <u>Abels</u>, 770 F.2d 26." The court held that in a fraudulent joinder inquiry, a district court may

"pierce the pleadings" or "look to more than just the pleading allegations to identify indicia of

fraudulent joinder." <u>In re Briscoe</u>, 448 F.3d at 218–19. Turning to policy, the court concluded

that judgment "counsels against confining a district court strictly to the pleading allegations when

it assesses a fraudulent joinder . . . question." <u>Id.</u>

**B.     The Commencement of the Thirty-Day Removal Period**

Section 1446(b)'s "thirty-day period begins to run when a defendant can reasonably and

intelligently conclude" that a case is removable. <u>Carroll v. United Airlines, Inc.</u>, 7 F. Supp. 2d

516, 521 (D.N.J. 1998). In other words, when a defendant can "ascertain" that a case can be

removed to federal court, the thirty-day removal period commences. <u>Id.</u>; <u>see also</u> <u>Holloway v.</u>

<u>Morrow</u>, No. 07-0839, 2008 WL 401305, at *3 (S.D. Ala. Feb. 11, 2008) (beginning to count "as

soon as a defendant is able to ascertain intelligently that the action is removable"); <u>Naef v.</u>

<u>Masonite Corp.</u>, 923 F. Supp. 1504, 1511–12 (S.D. Ala. 1996) ("[T]he Court must determine at

what point Defendants could have intelligently ascertained that the action was removable through

reasonable scrutiny of the pleadings and facts of the action as it developed in state court."). This

may take place either with the filing of the complaint or after some later occurrence in the case,

such as a deposition or other discovery response.

The defendant may be able to ascertain that a case is removable solely from the face of the complaint, or the defendant may be able to so determine after reading the complaint in light of defendant's independent knowledge.  Defendant Norfolk Southern argues that defendants should not be charged with their independent knowledge; if a defendant cannot intelligently conclude that a case is removable from the face of the complaint, the thirty-day removal period should not begin until the first external event making the case removable—here, plaintiffs' written stipulation dismissing Conrail from the case.  (Def.'s Resp. 2.)  Plaintiffs counter that the Court should hold defendants responsible for their independent knowledge and begin counting the thirty-day period as of the receipt of the Complaint, at which time defendants could, based on the Complaint and their independent knowledge, determine that Conrail was fraudulently joined.  (Pls.' Mot. to Remand ¶¶ 42–47.)  Given the clear evidence that defendant Norfolk Southern knew that Conrail was fraudulently joined within thirty days of receiving the Complaint, the Court agrees with plaintiffs on this issue.

Other district courts have held that, in determining when the period for filing a notice of removal commences, the court must look beyond the face of the complaint and consider a defendant's independent knowledge to assess when the defendant could have intelligently ascertained that the case was removable.  See, e.g., Iulianelli v. Lionel, L.L.C., 183 F. Supp. 2d 962, 968 (E.D. Mich. 2002) ("[T]his aspect of § 1446(b) . . . could be construed in light of information beyond the four corners of the complaint that is known or readily available to the parties.  This latter construction, in the Court's view, better serves the objective of prompt determination of a forum, without in any way jeopardizing the defendant's full and fair 30-day

opportunity to decide whether to seek removal."). In <u>Iulianelli</u> the court analyzed both the complaint and defendant's independent knowledge at the time of service. 183 F. Supp. 2d at 967–68. The court held that defendant's notice of removal was untimely because "[l]ong before this case was removed, and perhaps even at its inception, Defendant and its counsel were aware that Plaintiff had misidentified Lionel Trains as his employer, and that Lionel, L.L.C. [a diverse defendant] was the proper party." <u>Id.</u> at 968.

In <u>Delaney v. Viking Freight, Inc.</u>, 41 F. Supp. 2d 672, 677 (E.D. Tex. 1999), the court reached a similar conclusion, expressly rejecting defendants' argument that only plaintiffs' voluntary acts and not defendants' subjective knowledge could trigger removal. "Because [defendants] were able to detect the fraudulent joinder without any additional information supplied by Plaintiffs, it is evident that removability was first ascertainable when Defendants received Plaintiffs' state-court complaint. Consequently, the 30-day removal period commenced at that time." <u>Id.</u> The court also distinguished a Fifth Circuit case, <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 494 (5th Cir. 1996), which held that "an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one." The <u>Delaney</u> court held that the principle of <u>S.W.S. Erectors</u> does not "appl[y] in the fraudulent joinder context. In cases involving fraudulent joinder, the removing party frequently—if not usually—has to rely on subjective knowledge to some degree to ascertain the existence of a fraudulently joined party." 41 F. Supp. 2d at 677.

In <u>Deming v. Nationwide Mutual Insurance Company</u>, No. 03-1225, 2004 WL 332741, at *5 (D. Conn. Feb. 14, 2004), the court found the notice of removal untimely because defendant waited until the state court granted the motion to strike the non-diverse parties. The defendant in

Deming made an argument similar to that asserted by Norfolk Southern in its response—that the case became removable in diversity following the action of the state court.  Id. at *1.  The Deming court found this argument unavailing:  "[Defendant] has not indicated that it learned any new facts from which it could ascertain that the claims against the non-diverse defendants had 'no possibility' of success on the merits between the time that plaintiff filed her complaint and the time that the Superior Court ruled on the motion to strike other than the ruling on the motion to strike itself."  Id. at *6.  Analyzing the policy implications of defendant's argument, the court concluded that "[p]ermitting such 'fraudulent joinder by hindsight' removal petitions would serve . . . to undermine 28 U.S.C. § 1446(b)'s thirty-day limit . . . ."

Notwithstanding these decisions, defendant Norfolk Southern argues that its Notice of Removal was timely because the Notice, when filed, was not based on fraudulent joinder. (Def.'s Resp. 5–6).  Defendant contends that its "beliefs concerning the validity of Plaintiffs' former claims against Conrail, a former party, [as evidenced in its Answer and its correspondence,] are irrelevant to the disposition of the instant motion."  (Id. at 6.)  Despite its earlier contentions that Conrail had been fraudulently joined, it was not required to file a Notice of Removal based on fraudulent joinder at that time and could wait until plaintiffs' agreement to dismiss Conrail to file a Notice of Removal on diversity jurisdiction grounds.  (Id.)

In essence, defendant is arguing that there is a difference between its independent knowledge, which allowed it to "ascertain" that the case was removable at the filing of the Complaint, and information that it learned from plaintiffs, but drawing such a distinction elevates form over substance.  If a defendant must file a notice of removal as soon the removability of the case can be intelligently ascertained, see Carroll v. United Airlines, Inc., 7 F. Supp. 2d at 521, the

10

source of knowledge on which defendant makes such an assessment should be irrelevant.

Norfolk Southern knew at the time that the Complaint was filed that plaintiffs could not make out a claim against Conrail because Conrail did not own the bridge at the time of the accident.  (See Answer ¶ 8.)  Nearly eleven months later, when Norfolk Southern filed its Notice of Removal, it possessed no additional knowledge save that the plaintiffs had stipulated to a dismissal of Conrail from the case.  The facts that convinced plaintiffs to enter into such a stipulation came from defendant and were in defendant's possession at the time that the Complaint was filed.  As the Delaney court noted, the information establishing that a party has been fraudulently joined is often defendant's "subjective knowledge."  41 F. Supp. 2d at 677.

Moreover, Norfolk Southern admits that it "has contended since the outset of the case that Conrail was fraudulently joined."  (Def.'s Resp. to Mot. for Leave to File 2.)  Norfolk Southern argues that the case hinges on the fact that its notice of removal is based on diversity jurisdiction after the non-diverse (arguably fraudulently joined) defendant was dismissed by plaintiffs, not on fraudulent joinder *per se*.  (Id.)  This distinction misses the point—if Norfolk Southern *could have* filed a notice of removal based on fraudulent joinder earlier, as it agrees that it could, it was *required* to do so or waive the right to remove.

The scope of the district court's inquiry in the fraudulent joinder context also informs the disposition of the instant motion.  When a defendant files a notice of removal based on fraudulent joinder, a district court may go beyond the pleadings in deciding a motion to remand.  See In re Briscoe, 448 F.3d at 218–19.  Likewise, the court can conduct an inquiry to determine when the defendant possessed the requisite knowledge to file a notice of removal based on fraudulent joinder.

In this case, had Norfolk Southern filed a notice of removal within thirty days of the Complaint based on fraudulent joinder of Conrail, this Court could have pierced the pleadings to consider evidence that Conrail no longer owned the bridge at issue.  Norfolk Southern would and could have presented such evidence at that time, making it unnecessary to wait almost eleven months to file a notice of removal.  Thus, defendant's current Notice of Removal is untimely.

**III.     CONCLUSION**

For the foregoing reasons, plaintiffs' Motion to Remand is granted.

**BY THE COURT:**

**   /s/ Honorable Jan E. DuBois   **
**JAN E. DUBOIS, J.**

12